UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TERESA WHITE, On behalf of herself and all others similarly situated, | ) ) ) ) | CASE NO. 5:22-cv-1493 |
| PLAINTIFFS, | ) ) | JUDGE SARA LIOI |
| vs. | ) ) ) ) | MEMORANDUM OPINION AND ORDER |
| STARK COUNTY VETERANS SERVICE COMMISSION, | ) ) ) | |
| DEFENDANT. | ) | |

Now before the Court is the parties' "Joint Motion for Approval of Settlement Pursuant to Section 216(b) of the FLSA." (Doc. No. 32 ("Joint Motion").) The Joint Motion is supported by the "Joint Stipulation of Settlement and Release" (Doc. No. 32-1, Ex. 1 ("Settlement")), as well as the Declaration of Attorney Ryan A. Winters ("Winters") (Doc. No. 32-3 (Winters Declaration)). Because the Court finds that the Settlement represents a fair resolution of plaintiffs' claims, the Joint Motion is granted and the Settlement is approved.

I. **BACKGROUND**

Plaintiff Teresa White ("White"), on behalf of herself and similarly situated employees, filed a collective action against defendant Stark County Veterans Service Commission ("SCVSC"), alleging SCVSC violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, by failing to pay earned overtime and accrued compensatory time. (*See generally* Doc. No. 1 (Complaint).) SCVSC is a mandated county organization governed by Ohio Rev. Code § 5907.01, *et seq.* (*Id.* ¶ 6.) SCVSC "employs hourly employees . . . in furtherance of its statutorily-

mandated purposes." (*Id.*) White has been employed by SCVSC since April 2017. (*Id.* ¶ 10.) In addition to White, the following employees or former employees of SCVSC have opted-in to this action as plaintiffs and have not otherwise withdrawn their consent: Darryl Asberry ("Asberry"), Sandra Helmick ("Helmick"), and Taylor Smothers ("Smothers"). (Doc. No. 32, at 10.) Together with White, these individuals comprise the plaintiffs in this action and are covered by and subject to the Settlement (collectively, "plaintiffs"). (*Id.*; *see* Doc. No. 32-1, Ex. 1 ¶ 4.)

Plaintiffs allege that SCVSC violated the FLSA by consistently underreporting the hours plaintiffs worked on a weekly basis. (Doc. No. 1 ¶ 15.) Specifically, it was plaintiffs' position that SCVSC "shortchanged employees and avoided paying earned and owed wages" by automatically recording that employees worked each day from 8:00 a.m. to 4:00 p.m., regardless of the hours they actually worked. (Doc. No. 32, at 8.) Plaintiffs also maintain that SCVSC paid plaintiffs compensatory time off at a rate less than one and one-half hours for each hour worked. (*Id.* at 9.) SCVSC denies that it violated the FLSA and maintains that no compensable work was performed before or after plaintiffs' scheduled shifts, and that, to the extent that any such work had been completed, plaintiffs had "ample opportunity to report this time but individually failed to do so." (*Id.*)

On November 14, 2022, the parties filed their Joint Stipulation of Conditional Certification and Proposed Notice, in which the parties stipulated to the following collective:

> All present and former hourly, non-exempt employees of [SCVSC] during the period of three years preceding the commencement of this action [August 22, 2019] to the present [October 25, 2022].

(Doc. No. 9, at 1.) On November 28, 2022, the Court approved the Joint Stipulation of Conditional Certification and Proposed Notice. (Minute Order [non-document], 11/28/2022.) The notice was

issued to the collective, and various individual members filed and/or withdrew consent forms, with only plaintiffs remaining at the time of settlement.

The parties engaged in extensive discovery, and SCVSC voluntarily produced "voluminous" payroll and timekeeping records. (Doc. No. 32, at 10.) Because some of the records were typewritten or handwritten, significant data entry and analysis was required to convert the data to a useable format. (*Id*.) Both sides spent considerable time analyzing and evaluating these records. (*Id*. at 11.) The parties also engaged in formal discovery, with plaintiffs' counsel propounding written discovery requests seeking records relating to employee handbooks, human resources policies and manuals, and timesheets and other timekeeping records. (*Id*.) Additionally, defendant's counsel issued third-party subpoenas to an information technology firm for door-swipe and related data for SCVSC's employees during the relevant time period, which was provided to plaintiffs' counsel. (*Id*.)

In order to avoid the burden, expense, and uncertainty of litigation, the parties agreed to discuss early resolution. After a comprehensive examination and analysis of the previously produced and discovered timekeeping records and data, the parties engaged in formal and informal settlement discussions. On May 10, 2023, the parties participated in a mediation before Magistrate Judge Carmen E. Henderson. (Minutes of Proceedings [non-document], 5/10/2023.) While the mediation was not successful, the parties continued to explore resolution. Over the next several months, the parties continued their informal negotiations and continued to exchange information and additional documentation. (Doc. No. 32, at 12.) On August 15, 2023, the parties filed a Notice of Settlement advising the Court that the parties had "come to an agreement as to the material terms of a settlement[.]" (Doc. No. 29 (Notice), at 1.)

The total settlement amount is $60,000.00. (Doc. No. 32-1, Ex. 1 ¶ 13.) From the total settlement amount, $28,850.00 will be paid to plaintiffs ($14,425.00 in compensatory damages and $14,425.00 in liquidated damages), with individual payment amounts to be made on a proportional basis, taking into account the total estimated unpaid overtime compensation damages during the applicable time period. (*Id*.; Doc. No. 32, at 13.) The Settlement further provides for an award of attorney's fees to plaintiffs' counsel in the amount of $30,643.77, and costs in the amount of $506.23, for a total award to plaintiffs' counsel in the amount of $31,150.00. (Doc. No. 32, at 14; Doc. No. 32-1, Ex. 1 ¶ 14; Doc. No. 32-3 ¶ 42.)

## II. APPLICABLE LAW

"Employees are guaranteed certain rights by the FLSA, and public policy requires that these rights not be compromised by settlement." *Crawford v. Lexington-Fayette Urban Cty. Gov*., No. 06-cv-299, 2008 WL 4724499, at *2 (E.D. Ky. Oct. 23, 2008). "The central purpose of the FLSA is to protect covered employees against labor conditions 'detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.'" *Id*. (quoting 29 U.S.C. § 202).

The provisions of the FLSA are mandatory and, except in two narrow circumstances, are generally not subject to bargaining, waiver, or modification by contract or settlement. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706, 65 S. Ct. 895, 89 L. Ed. 1296 (1945); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). The first exception involves FLSA claims that are supervised by the Secretary of Labor pursuant to 29 U.S.C. § 216(c). *Lynn's Foods, Inc*., 679 F.2d at 1533. The second exception, applicable here, encompasses instances in which

federal district courts approve settlement of suits brought in federal district court pursuant to § 16(b) of the FLSA. *Id.*

In reviewing the settlement of a federal plaintiff's FLSA claims, the district court must "'ensure that the parties are not, via settlement of [the] claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime.'" *Rotuna v. W. Customer Mgmt. Grp. LLC*, No. 4:09-cv-1608, 2010 WL 2490989, at *5 (N.D. Ohio June 15, 2010) (quoting *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 719 (E.D. La. 2000)). The existence of a bona fide dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA. *Id.* (citing *Crawford*, 2008 WL 4724499, at *3). The Court should also consider the following factors: the risk of fraud or collusion, the complexity, expense, and likely duration of the litigation, the amount of discovery completed, the likelihood of success on the merits, and the public interest in settlement. *Crawford*, 2008 WL 4724499, at *3 (citing *Int'l Union, United Auto., Aerospace, & Agr. Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). In addition, where the settlement agreement proposes an award of attorney's fees, such fees must be reasonable. *See generally Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999) (citing *Blum v. Stenson*, 465 U.S. 886, 893, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)).

### III. ANALYSIS

At the outset, the Court finds that the divergent views of the facts and the law presented bona fide disputes that, had the parties not reached settlement, would have necessitated resolution by the Court and/or a jury. The Joint Motion confirms the same. As set forth above, the parties disagree as to whether plaintiffs performed overtime for each covered workweek and the amount

5

of any such overtime, as well as whether plaintiffs had ample opportunity to report such time but failed to do so. (Doc. No. 32, at 16–17.) The parties also dispute whether any FLSA violation, if one occurred, was willful and whether SCVSC is entitled to a good faith defense. (*Id*. at 17)

Having reviewed the terms of the Settlement, the Court finds that the Settlement represents a fair and reasonable resolution of bona fide disputes. Further, the Court notes that the Settlement was the result of arms-length negotiations over the course of many months between parties that were represented by able counsel. As such, the Court finds no risk of fraud or collusion.

With respect to the monetary awards to plaintiffs, the Settlement provides that plaintiffs will receive individual payments calculated proportionally on each plaintiffs' alleged overtime damages during the relevant period, with the individual payments providing additional compensation for between 17 and 49 minutes per workday.[1] The parties represent that the Settlement achieves an exceptional result for plaintiffs with the individual payments representing a "substantial percentage" of plaintiffs' claimed damages. (Doc. No. 32, at 12.) The Court agrees that the payments represent an excellent result. Moreover, the Court has taken into account the opinion of counsel in this action, who has expressed the opinion that the proposed settlement is a fair and adequate compromise of the disputed claims. (Doc. No. 32-3 ¶ 29.)

As for the award of attorney's fees and costs to plaintiffs' counsel, the Court finds that the award, which is supported by a declaration of counsel, is reasonable, taking into consideration the fact that a settlement was reached early in the litigation and the successful outcome provides

---

[1] Specifically, Asberry will recover $5,039.66, representing approximately 41 minutes of recovery per workday; Helmick will recover $9,390.98, representing approximately 36 minutes of recovery per workday; Smothers will recover $1,850.26, representing approximately 17 minutes of recovery per workday; and White will recover $12,569.10, representing approximately 49 minutes of recovery per workday. (Doc. No. 32, at 13–14.)

substantial relief to plaintiffs. When a settlement agreement proposes an award of attorney's fees, such fees must be reasonable. *See Moulton v. United States Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009) (citing *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)). There are two methods for determining whether a fee is reasonable: the lodestar method and the percentage-of-the-fund method. *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011). Here, the parties utilize the lodestar method.

Three attorneys represented plaintiffs pursuant to a contingency agreement. (Doc. No. 32-3 ¶ 32.) Attorney Winters spent 61.8 hours on this matter with an hourly rate of $425. (*Id.* ¶ 41.) Attorney Joseph F. Scott spent 22.4 hours on this case with an hourly rate of $500. (*Id.*) Attorney Kevin M. McDermott II spent 128.6 hours on this case with an hourly rate of $400. (*Id.*) The Court finds the hourly rates charged are reasonable for experienced attorneys in this district. *See McKnight v. Erico Int'l Corp.*, No. 1:21-cv-1826, 2023 WL 2003276, at *13–14 (N.D. Ohio Feb. 8, 2023) (finding hourly rates of $500, $425, and $400 for the same attorneys and the same firm to be reasonable). The Court also finds the number of hours expended reasonable, given the extensive discovery conducted by counsel, the special challenges associated with converting some of the documents to usable data, and the formal and informal settlement negotiations conducted over a period of several months before a global resolution was reached. Moreover, at a combined fee lodestar of $88,905.00, the Settlement's attorney's fee award of $30,643.77 results in a "negative multiplier" of 0.334. (Doc. No. 32-3 ¶ 42.) Such a negative multiplier supports the reasonableness of the fees. *See, e.g.*, *Miller v. Baltimore Builders Supply & Millwork, Inc.*, No. 2:21-cv-4867, 2023 WL 6554073, at *2 (S.D. Ohio Sept. 13, 2023) (approving attorney's fees

representing a "negative multiplier" of between 0.42 and 0.39 and collecting cases).[2] The Court also finds that the $506.23 claimed in litigation expenses and costs is reasonable under the circumstances.

### IV. CONCLUSION

For all of the foregoing reasons, the Court approves the Settlement. The Court orders that the settlement payments be distributed in the manner, and subject to the terms and conditions, set forth in the Settlement. The claims in plaintiffs' complaint are dismissed with prejudice, and this case is closed. The Court shall retain jurisdiction to enforce the parties' Settlement.

**IT IS SO ORDERED**.

Dated: October 30, 2023

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[2] The percentage-of-the fund method, which yields an award of slightly greater than 50% of the total settlement fund, also demonstrates the reasonableness of the attorney's fees award. *See Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-729, 2012 WL 1945144, at *9–10 (S.D. Ohio May 30, 2012) (finding a fee award in excess of 50% of the total recovery to be reasonable based on the heavily contested nature of the litigation, exceptional recovery for the plaintiffs, and a significant reduction in attorney's fees compared to the lodestar calculation).